## Corso v. Crawford et al.

(Decided March 8, 1929.)

DOOLAN & DOOLAN for appellant.

HOLT & HOLT for appellees.

OPINION OF THE COURT BY COMMISSIONER TINSLEY—Affirming.

On August 25, 1926, A. T. Crawford and Leonard Walton and H. N. Hale entered into the following contract:

"Louisville, Kentucky, August 25th, 1926.

"This is to certify that I have this day employed Leonard Walton and H. N. Hale to sell my home place at auction on or about September 13th, 1926,

on the following terms and conditions: I am to pay all expenses on said sale not to exceed $500.00, $250.00 of this is to be advanced, the balance to be paid immediately after sale. The said Walton and Hale agreed to oversee the cleaning up, platting, advertising and putting on of the sale; for their service they are to receive 10% on all gross bona fide sales. I reserve the right to bid in any lot or part of the property that is not bringing a satisfactory price, and no commission to be paid on same.

"A. T. Crawford,
"Leonard Walton,
"H. N. Hale."

A. T. Crawford is the husband of Frances P. Crawford. The title to the property referred to in that contract was in Frances P. Crawford. Thereafter Walton and Hale prepared the property for sale, caused advertisements of the sale to be inserted in the newspapers of Louisville, and a sign to be erected on the property, wherein the date of sale was fixed for September 13, 1926, at 2 p. m., and employed J. G. Gallagher as auctioneer to conduct the sale. The sale was had on the date advertised and at which the appellant, Mary Corso, bid for certain portions of the property, to wit, one lot on which stands the dwelling house, for which she bid $12,500; lots numbered 1, 2, 3, and 4, for which she bid $3,718.50, and lots 9 and 10, for which she bid $1,016.50. Appellees declined to execute deed to her, and she instituted this action to require them to do so, alleging that "immediately after the sale aforesaid, there was executed between this plaintiff and the auctioneer representing the defendant a written memorandum of said sale." A number of defenses were relied on by appellees in their separate answers, including the plea of the statute of frauds by Frances P. Crawford. But, in disposing of the case below, the chancellor held that the written memorandum of sale made at the time and relied on by the appellant herein was insufficient, and dismissed the petition. On this appeal it is urged by the appellant (1) that authority of an agent to act for the owner in a sale of real property need not be in writing; (2) that an answer admitting a sale of property sufficiently described therein, though the memorandum of sale be questioned, cures any deficiency in the memorandum, and no proof is required in the premises;

(3) a memorandum of an agreement for the sale of real property is not insufficient merely because other evidence is required to determine what property was meant; and (4) if the memorandum describes the boundaries of a subdivision of land, or refers to some recorded or pre-existing plat by which parcels described by lot numbers may be identified, such plat sufficiently identifies the property to require specific performance.

1. There can be no doubt from this record that Mrs. Crawford, real owner of the property, was fully conversant with all that was done by her husband in connection with the sale of the property in question, and that she not only acquiesced therein, but ratified it, and that her husband was acting as her agent; nor can it be gainsaid that the authority of an agent to act for the owner in a sale of real property need not be in writing. Whitworth v. Pool, 96 S. W. 880, 29 Ky. Law Rep. 1104; Womack v. Douglas, 157 Ky. 716, 163 S. W. 1130; Huff v. Fuller, 197 Ky. 119, 246 S. W. 149.

On the other hand, it is equally well settled that an allegation or admission in a pleading does not take the place of, nor can it add to or supply a deficiency in, the memorandum or contract of sale. May v. May, 110 S. W. 808, 33 Ky. Law Rep. 638. The original memorandum is before us. It is a sheet of ruled paper, torn from a single entry ledger; on it is pasted an advertisement of the sale, clipped from a newspaper, in which the property to be sold is described as "a handsome twelve room brick, overlooking the beautiful Brownsboro Road; eleven beautiful building sites, eight fronting on Brownsboro Road and two on Vernon Avenue, and a very desirable eighty foot lot adjoining the house on Bellaire Avenue." Beneath this advertisement there appears in lead pencil these words and figures:

"Terms $8,000.00 Mtg. assumed. Bal. cash, 1st offered 80x185½ and improvements. Deposit of $250.00. Possession 30 days.

"Mary Corso, 915 So. 5th."

Passing over three lines of writing which have no connection with this case we find next written thereon:

"Lot 1-2-3-4 bid $18.50 per foot $3,718.50.
"Mary Corso, 915 So. 5th."
"Lot 9-10 bid $9.50 per foot.      (Corso)"

At the bottom of this sheet of paper is this: "Accepted by J. G. Gallagher, Auctioneer."

The proof shows that the name "Mary Corso" appearing on that paper is the signature of appellant, Mary Corso, signed by her to evidence her purchase; and that the words "Accepted by J. G. Gallagher, Auctioneer," were written by the auctioneer to evidence his acceptance of Mrs. Corso's bid.

This brings us to the controlling question in this case: Does that memorandum sufficiently describe the property to identify it? There are three parcels of the land: (1) "80x185½ and improvements"; (2) "lots 1, 2, 3 and 4"; (3) "lots 9-10."

True it is that a memorandum of an agreement for the sale and purchase of real property is not insufficient merely because other evidence than the memorandum itself is required to determine what property was meant (Hall v. Cotton, 167 Ky. 464, 180 S. W. 779, L. R. A. 1916C, 1124; Huber v. Johnson, 174 Ky. 697, 192 S. W. 821); but in all such cases the "other evidence" allowed was only such as to *designate* the land *identified* by the memorandum. For instance, in the case of Hyden v. Perkins, 119 Ky. 188, 83 S. W. 128, 26 Ky. Law Rep. 1099, the writing identified the property as a "farm of about 20 acres known as the Vaught farm." In Henderson v. Perkins, 94 Ky. 207, 21 S. W. 1035, 14 Ky. Law Rep. 782, the property was identified in the writing as "my home place and store house." In Bates v. Harris, 144 Ky. 399, 138 S. W. 276, 36 L. R. A. (N. S.) 154, the property was identified as "her muddy creek farm" embracing "113 acres." In Posey v. Kimsey, 146 Ky. 205, 142 S. W. 703, the property was identified in the writing as "my farm known as the John Baskett home farm." In each of those cases parol evidence was admitted because the description sufficiently identified the land as that it could be pointed out—that is, designated by further evidence. On the other hand, in Brice v. Hays, 144 Ky. 535, 139 S. W. 810, the land was referred to in the writing as "about 150 acres of land near Otter Creek Station, 1 Mile North of Rineyville, Hardin County, Kentucky, on I. C. R. R." It was held that this description was not only insufficient to identify the land, because there was nothing in the writing to indicate what 150 acres of land was referred to; it was not identified as "his" home place or even as "his" land; and for that reason parol evidence was not competent to point out or designate the land intended.

The rule is succinctly stated in Hall v. Cotton, supra, that:

> "When the description contained in the writing either by reference to a water course, or a town, or some well known local object, or to a former conveyance of record, so identifies the property, which is the subject matter of the contract, that it may be designated or pointed out in parol testimony by reason of such reference in the writing to such stream, town, conveyance or well known object, then parol testimony is competent for that purpose; but that when the description in the writing has no such reference and it is necessary to resort to parol testimony to *identify* the subject matter of the contract as distinguished from a designation of it, then parol evidence is incompetent and the writing will be held insufficient to satisfy the demands of the statute."

However, appellant urges that the description of the parcels of land, as contained in the memorandum relied on, when considered in connection with the fact, as shown by the testimony, that the sales were made with reference to a plat and blueprints thereof furnished to prospective bidders on the ground on day of sale and used in selling by the auctioneer and in bidding by those present, including appellant, sufficiently identifies the property as to satisfy the statute, and in this connection relies upon the case of Caperton v. Clarke, 203 Ky. 191, 261 S. W. 1098. In that case, and in the case of McBrayer v. Cohen, 92 Ky. 479, 18 S. W. 123, 13 Ky. Law Rep. 667, it was held that previous advertisements of the sale and plats of the property distributed to prospective bidders, one of which was proved to have been in the hands of the purchaser, were, when taken in connection with the memorandum, competent to render certain the identity of the land sold. But in this case it is not contended, and could not well be, that the printed advertisement of the sale furnishes any aid whatever in identifying property, and the testimony concerning the plat and blueprints is far from satisfactory.

Merritt Drane, the engineer, says that he made one plat, and it is filed with the record, but he says that he made no additional copies of it or any blueprints of it. It is a pencil sketch made on the reversed side of a letterhead of the Jefferson county fiscal court. Leonard Walton says he did not have any blueprints made. H. N.

Hale says he had no blueprints made. The only testimony that there were any plats at all is the testimony of Howard Walton, who says he got some plats from his father's (Leonard Walton) room and took them to the sale and distributed them; that they were just like the original in the record, the same color and on white paper. No other witness was introduced who saw any plat; appellant says that on Sunday before the sale, while she was inspecting the property, she saw a "picture" of it. Appellees introduced a number of witnesses who testified that no plats or blueprints were distributed or used at the sale.

In the case of Caperton v. Clarke, supra, the property sold was lots carved out of the Camp Zachary Taylor site. The subdivision and sale of this camp site had been extensively advertised, and blueprints showing all the tracts and lots into which the camp site had been divided, with a number given to each thereon, had been distributed on the property before the sale. One of these blueprints was in the hands of Caperton at the time of sale and one in the hands of the auctioneer. The land involved was lots, 11, 12, 13, and 14, each of which was bid for and purchased by Caperton, and for each of which he signed a sales ticket headed "Camp Zachary Taylor sale record"—giving the terms of sale and describing the property sold only by lot number. In holding that description sufficient under the circumstances of that case, after quoting from the opinion in McBrayer v. Cohen, supra, we said:

"Applying the rule in the McBrayer case, supra, to the case at bar, the printed advertisements of the sale in question showed it to be the rifle range unit of Camp Zachary Taylor in Jefferson County, Kentucky, that was being sold. The blueprint of that unit of the camp, shown to have been in the hands of Caperton when the sale was made, showed that the sale was being made by lots numbered 1 to 26, inclusive. Taking these things into account, in connection with the description given in the memorandum of sale, we are left in no doubt that the parties intended by the words used to describe the land sold that it was lot No. 12 of the rifle range unit of Camp Zachary Taylor."

No such, or similar, circumstances are shown in this case. The printed advertisement of the sale affords no

aid whatever; none is claimed for it, and the proof of plats or blueprints is negligible. The case is not therefore within the rule laid down in the Caperton case. The memorandum relied on in this case is insufficient in itself, in that it does not identify the property; and the evidence offered cannot be received, because by it the property must be both identified and designated; and, as we have seen, parol testimony is only competent to designate property that is identified by the writing. If the positions of the parties herein were reversed, and appellee had sued to require appellant to comply with her purchase, the only means of identifying the property described in the memorandum would have been the testimony of appellee or her agent that certain portions of the whole property was intended. Such is exactly the sort of evidence which is not admissible. Appellee could not therefore have enforced the contract. Nor can appellant. The chancellor having declined to enforce the contract, that judgment must be, and it is affirmed.